UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CUSTOM TRUCK ONE SOURCE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00046-HAB-SLC |
| | ) | |
| AARON NORRIS & NORRIS UTILITIES, LLC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER ACCEPTING JURISDICTION**

On February 8, 2022, Custom Truck One Source, Inc. (CTOS) filed its Complaint with Jury Demand (ECF No. 1) asserting claims for breach of contract, misappropriation of trade secrets, and several other counts against former employee Defendant Aaron Norris ("Norris") and Defendant Norris Utilities, LLC ("Norris Utilities") (collectively, "Defendants"). Contemporaneous with the Complaint, CTOS moved for a Temporary Restraining Order and Preliminary Injunction (ECF No. 2) and requested expedited discovery (ECF No. 6). CTOS seeks to enjoin Defendants from continuing their allegedly wrongful acts, including using CTOS's confidential information to compete with CTOS and solicit CTOS customers.

Upon review of these filings, the Court learned of a concurrent Alabama state court action pending in Jefferson County Circuit Court, Case No. 01-CV-2022 -900254.00, involving the same parties and potentially similar issues as those raised in the present suit. (ECF No. 2-3, Ex. C). Given the existence of this potentially parallel state proceeding and the emergency injunctive relief sought by CTOS in this case, the Court ordered the parties to file expedited simultaneous briefs on whether this Court should exercise jurisdiction or abstain under the doctrine espoused in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"). (ECF

No. 10). The parties timely filed their briefs (ECF No. 16, 17) and the matter is ripe for consideration. After consideration of the parties' briefs, the Court finds that the *Colorado River* factors balance in favor of exercising jurisdiction over this action.

## DISCUSSION

### 1. The Federal Lawsuit

CTOS is a single-source provider of specialized truck and heavy equipment solutions to the utility, telecommunications, rail, and infrastructure markets in North America. (Compl. ¶14). To identify, solicit, and service existing and prospective customer relationships and opportunities, CTOS employs a team of account managers. (*Id.* ¶16). On September 1, 2014, Norris was hired as an account manager by NESCO LLC ("NESCO") to manage the Southeast territories which included Alabama, Arkansas, Louisiana, and Mississippi. (*Id.* ¶¶ 20-21). On April 1, 2021, NESCO and CTOS integrated into a single entity and Norris became an employee of CTOS. (*Id.* ¶ 22

On March 5, 2015, Norris signed a Confidential Retention and Release Agreement (Agreement) with NESCO. (Compl., ECF No. 1-1, Ex. A). The Agreement includes several restrictive covenants relevant to the present litigation – a confidentiality provision, a non-competition provision, and a non-solicitation provision. (*Id.* ¶¶s 11-12). Paragraph 18 of the Agreement includes a choice of law/venue provision that states:

> Choice of Law/Venue. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Indiana, without application of its conflict of law principles. The parties agree that any legal action arising out of or relating to this Agreement shall be commenced and maintained exclusively before any appropriate state court located in Allen County, Indiana, or in the United States District Court for the Northern District of Indiana, and the parties hereby consent to the personal jurisdiction and venue of such courts and waive any right to challenge or otherwise object to personal jurisdiction or venue in any action arising out of or relating to this Agreement commenced or maintained in such courts.

2

In exchange for Norris' signing the Agreement, he received a retention payment of $50,000. (Compl. ¶ 27).

On November 5, 2021, Norris voluntarily resigned his employment from CTOS. (Compl. ¶ 36). The Complaint alleges that Norris' resignation triggered the non-competition and non-solicitation provisions of the Agreement. (*Id.* ¶ 37). The Complaint also alleges that Norris violated these provisions when he established a competing business, Norris Utilities LLC, and solicited CTOS customers. CTOS also believes that Defendants are using CTOS' confidential information including pricing information and customer contact information.

On January 7, 2022, CTOS sent a "cease and desist" letter to the Defendants. The parties then engaged in informal dispute resolution to no avail. After receiving notice of the Alabama suit, *infra*, CTOS filed suit in this Court against the Defendants and sought temporary and permanent injunctive relief.

2. **The Alabama Lawsuit**

On January 26, 2022, while the parties were engaged in informal discussions to resolve their disagreements, the Defendants preemptively filed suit against CTOS in Alabama state court. (ECF No. 2-3). In that suit, Norris alleges breach of Paragraph 4 of the Agreement, related to compensation. He claims, among other things, that CTOS wrongfully refused to pay commissions owed to Norris, withheld commission information from him, and failed to award him promised stock. (ECF No. 2-3, ¶ 14). CTOS' failure to comply with Paragraph 4, Defendants assert, is a material breach voiding the noncompete and non-solicitation provisions of the Agreement. Additionally, the Defendants allege that CTOS interfered with their business contracts by contacting their suppliers, threatening them, and intimidating them to induce them to no longer conduct business with the Defendants. (*Id.* ¶ 40). Defendants also allege state claims of defamation

and unjust enrichment. Among other relief sought, the suit seeks a declaratory judgment that the non-competition and non-solicitation provisions of the Agreement are unenforceable.

### 3. Analysis

Federal courts may raise abstention sua sponte, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 524-25 (7th Cir. 2021); *Int'l Coll. of Surgeons v. City of Chi.*, 153 F.3d 356, 360 (7th Cir.1998) (district court has authority to sua sponte consider whether to abstain under judicially created abstention doctrines). Given the presence of concurrent state and federal proceedings, the Court deemed it appropriate to address the threshold issue of abstention prior to assessing the merits of the case or, in the case of the preliminary injunctive relief sought here, the likelihood of success on the merits under Fed.R.Civ.P. 65. For this reason, the Court directed the parties to file briefs on this preliminary issue. It is to this threshold issue that the Court now turns.

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River,* 424 U.S. at 817. That duty reflects the "undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 359 (1989). Because a decision to abstain pushes against this obligation, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River*, 424 U.S. at 813.

Where subject-matter jurisdiction exists, the Supreme Court has found that in some cases a court should still abstain from hearing the case. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 720–21 (1996) ("[W]e have held that federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest."). But because abstention is "an exception to a court's normal

4

duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998). Of relevance here, under the *Colorado River* doctrine, a federal court may decline to exercise jurisdiction in exceptional circumstances "due to the presence of a concurrent state proceeding" and "for reasons of wise judicial administration." *Colorado River*, 424 U.S. at 818. A district court must make a two-part inquiry to determine whether *Colorado River* abstention should apply: (1) whether the concurrent state and federal actions are parallel; and (2) if so, whether "exceptional circumstances" justify abstention. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

### A.     *Whether the Actions are Parallel*

"Two suits are parallel for *Colorado River* purposes when 'substantially the same parties are contemporaneously litigating substantially the same issues.'" *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011) (citing *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)). "A court should examine 'whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues.'" *Id.* at 499 (quoting *Tyrer*, 456 F.3d at 752); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645–46 (7th Cir. 2011) ("[T]he court must ascertain whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum." (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004))). "In essence, the question is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Adkins*, 644 F.3d at 499 (quoting *Clark*, 376 F.3d at 686); *accord Deb v. SIRVA, Inc.*, 832 F.3d 800, 814–15 (7th Cir. 2016); *Huon*, 657 F.3d at 645. Doubts should be resolved in favor of exercising jurisdiction. *Adkins*, 644 F.3d at 499; *see*

*also Huon*, 657 F.3d at 645 ("If there is any doubt that cases are parallel, a district court should not abstain." (citing *AAR Intl'l, Inc.*, 250 F.3d at 520)).

CTOS concedes that the parties in the two proceedings are identical and that some issues in both proceedings arise from the Agreement. Common subject matter alone, however, cannot establish the requisite parallelism. Recognizing this fact, CTOS argues that the two suits are not parallel because the Alabama state court cannot resolve all the claims between the parties asserted in the federal suit. CTOS points out that besides its breach of contract claim it has asserted a claim under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, over which this Court has original jurisdiction.

Defendants, unsurprisingly, assert that the contractual issues in both proceedings are interdependent, that is they involve an interpretation of the Agreement and whether the Defendants are bound by the restrictive covenants in the Agreement or whether they can be excused of that obligation because of a first material breach by CTOS. That part is true and, if both suits relate to the same contract there is a common identity of parties, issues, and remedies. Yet Defendants do not address the fact that an Alabama state court cannot resolve CTOS's federal claim under the DTSA. Nor do Defendants try to address the fact that this lawsuit involves claims that are neither alleged in the state action nor based on an alleged breach of the Agreement, including state claims for breach of fiduciary duty, tortious interference with prospective economic advantage or misappropriation of trade secrets. Defendants have not provided the Court with any reason as to why a ruling in the state court action would resolve these non-contract-based claims. Since this lawsuit's claims differ, resolution of the state court action will not dispose of all the claims in this forum. This difference in the proceedings strongly militates against a finding of parallel proceedings.

The Court is similarly not persuaded by Defendants' view that the other claims in this suit could be presented as compulsory counterclaims in the state proceeding. Defendants state, "CTOS indisputably had the opportunity to serve an Answer in the State Court Action and assert all of its causes of action from this proceeding as compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure." (ECF No. 17 at 10). This is simply incorrect. First, the Federal Rules of Civil Procedure have no application in an Alabama state court. Second, it is disputable whether CTOS could have even brought its federal claim under the DTSA in state court. *Compare Lamont v. Conner*, 2019 WL 1369928, at *7 (N.D. Cal. Mar. 26, 2019) ("The [DTSA] builds upon the Espionage Act of 1996 and provides exclusive original jurisdiction to the District Courts."), *with Allstate Ins. Co. v. Jewell*, 2019 WL 3526703, at *4 (W.D. Ky. May 21, 2019) ("The undersigned has found no indication that Congress affirmatively divested state courts of jurisdiction to hear claims under the DTSA.").

Simply put, the parallelism inquiry is not met here. The Court cannot say the suits are clearly parallel and follows the Seventh Circuit's direction to exercise jurisdiction if there is any doubt. *See Adkins*, 644 F.3d at 499. Further, this Court is somewhat skeptical that the state court can adequately protect CTOS' rights.

**B. Do Exceptional Factors Justify Abstention?**

The simple answer is "no." While the Court finds that the proceedings are not parallel, it will briefly address why, even if they were, the careful balancing of the ten non-exclusive factors required by the Seventh Circuit supports exercising jurisdiction. *Freed*, 756 F.3d at 1018 (7th Cir. 2014). These factors include the following:

(1) whether the state has assumed jurisdiction over property;
(2) the inconvenience of the federal forum;
(3) the desirability of avoiding piecemeal litigation;
(4) the order in which jurisdiction was obtained by the concurrent forums;

  (5) the source of governing law, state or federal;
  (6) the adequacy of state-court action to protect the federal plaintiff's rights;
  (7) the relative progress of state and federal proceedings;
  (8) the presence or absence of concurrent jurisdiction;
  (9) the availability of removal; and
  (10) the vexatious or contrived nature of the federal claim.

*Id.* No one factor is determinative, and a court must "treat as paramount the overriding rule that abstention is the exception." *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 550 (7th Cir. 1997); *see also AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) ("we have recognized a general presumption against abstention").

  Several of the above factors may be easily removed from the equation as neutral factors. First, there is no property over which the Alabama state court has assumed jurisdiction. Second, there has been no substantial progress in either the state litigation or this litigation which, in turn, makes the order in which jurisdiction was obtained largely irrelevant. *Walls v. VRE Chicago Eleven, LLC,* 344 F. Supp. 3d 932, 951 (N.D. Ill. 2018) ("when each court obtained jurisdiction is to be determined in a pragmatic, flexible manner. "). *See also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 702 (7th Cir. 1992) ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). Third, as the Court has already noted above, whether concurrent jurisdiction exists over the DTSA claim is a subject of debate.

  That said, the majority of the remaining factors, lend themselves to this Court exercising jurisdiction. The Court has already indicated its doubts on whether the state court could protect CTOS' rights, *supra*. But more importantly for the Court, the existence of the forum selection clause and the choice of law provision, while not dispositive, are highly relevant. *Merrill Lynch Com. Fin., Corp. v. Trident Labs, Inc.*, No. 10C5925, 2011 WL 2415159, at *3 (N.D. Ill. June 10, 2011) (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 n.10 (7th Cir. 2001)).

8

Defendants do not challenge the validity of either the forum selection clause or the choice of law provision. And they are hard-pressed to do so since in the context of the *Colorado River* analysis, a party subject to a valid forum selection clause has waived the argument that the forum is inconvenient. *See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988). And there is a high likelihood that a federal district court sitting in Indiana is far more familiar with Indiana law than an Alabama state court. Finally, there is no indication that this action was brought for a vexatious or improper purpose. CTOS had no choice but to sue in an Indiana court because of the Agreement's choice of law, venue, and forum selection clause.

In short, the Court finds that few, if any, of the above factors, warrant surrendering jurisdiction in this case. The Court will exercise jurisdiction.

## CONCLUSION

Based on the analysis above, the Court finds the exercise of jurisdiction appropriate under *Colorado River*. The Court shall set a telephonic status conference by separate entry to discuss the scheduling of this matter relating to the request for TRO and Preliminary Injunction.

So ORDERED on February 16, 2022.

                                               s/ *Holly A. Brady*
                                               JUDGE HOLLY A. BRADY
                                               UNITED STATES DISTRICT COURT